253 So.2d 890 (1971)
CITY OF CORAL GABLES, a Municipal Corporation, et al., Appellants,
v.
Joseph SACKETT, Appellee.
No. 71-810.
District Court of Appeal of Florida, Third District.
September 28, 1971.
Rehearing Denied November 23, 1971.
*891 Charles H. Spooner, City Atty., and Robert D. Zahner, Asst. City Atty., George N. Jahn, Miami, Frank W. Guilford, Jr., Coral Gables, Sibley, Giblin, Levenson & Ward, Miami Beach, for appellants.
Adams, George & Wood, Miami, for appellee.
Before PEARSON, CHARLES CARROLL and HENDRY, JJ.
PER CURIAM.
This is an appeal by the defendants below from an adverse judgment by which the operation and enforcement of an ordinance granting a requested change of zoning and special use exceptions for certain property were enjoined on the ground the application previously had been denied, and prohibiting the city from considering an application therefor until after the lapse of a certain period, as specified by the city's zoning code in that circumstance.
The owners of a tract of land in the City of Coral Gables made application for change in the zoning thereof and for certain use exceptions. Following a recommendation of the city's Planning and Zoning Board[1] the application for rezoning came before the city commission,[2] and an ordinance approving the zoning change application received a favorable vote on "first reading." Eight weeks thereafter, on February 9, 1971, the application came before the commission for consideration on "second reading."[3] The action taken by the commission with reference to the proposed ordinance on that occasion was to deny it, by a tie vote of four members of the commission with one commissioner not voting. Under Roberts Rules of Order, previously adopted by the commission, the *892 tie vote was a rejection of the motion. The minutes reflected the tie vote, and recited that the motion failed.
The city's zoning code or ordinance contains a provision that rejection of an application for a zoning change will preclude a reapplication therefor or its reconsideration within a year, except upon changed conditions or altered plans deemed by the commission to justify the reconsideration thereof within the year.[4] Notwithstanding that prohibition, the commission rescheduled the matter for consideration, as on second reading, for a later meeting, and after certain postponements at the instance of the commission, it was placed on the agenda for a meeting to be held March 23, 1971.
Thereupon the plaintiff, a citizen and taxpayer, filed suit against the city in the circuit court, seeking to enjoin such further action thereon by the city on the ground that it was interdicted by the zoning code, in view of the application having been rejected on second reading on February 9, 1971. The owners applied for and were granted leave to intervene as defendants. A temporary restraining order sought by the plaintiff was denied by the trial court, on March 5, 1971. The plaintiff appealed and this court affirmed on March 23, 1971. Sackett v. City of Coral Gables, Fla.App. 1971, 246 So.2d 162.
On March 23, 1971, the city commission again entertained the rezoning application (as upon a second reading) and voted affirmatively thereon. The product of that action by the city commission was an ordinance granting the zoning change application.
Thereafter the plaintiff filed an amendment to the complaint (Rule 1.190(d) FRCP), 30 F.S.A. alleging that subsequent action of the commission, charging such action was illegal in that it was prohibited by the zoning code, and seeking injunctive relief therefrom. On final hearing the trial court granted the relief sought, by a judgment entered June 23, 1971.
The city and the intervenor defendants then filed the present appeal from the final judgment which nullified the March 23 approval of the rezoning application. In seeking reversal the appellants present three contentions. One is that the plaintiff was without standing to bring and maintain the action. The other two contentions are that the commission was not precluded from considering the application on "second reading" on March 23, because the action of the commission on February 9 rejecting the rezoning application was a nullity and void on two grounds; first, due to the failure of one of the five commissioners to vote thereon, and second, because the minutes of the February 9 meeting failed to recite or show that the ordinance was read in full as required by the charter. The foregoing contentions of the appellants were raised in the trial court and were rejected there, as revealed by a memorandum opinion filed by the court upon entering judgment.
We agree with the holding of the trial court that the plaintiff was not *893 without standing to challenge the commission action of March 23, 1971, on the charge and ground that it was performed contrary to a provision of the zoning code and therefore was illegal.[5] Also, we agree with the conclusion of the trial court that failure of one of the five commissioners to vote would not render void the action taken by the other commissioners at the February 9 meeting, if otherwise effective.
The remaining contention presents a more difficult problem. The argument of the appellants that the zoning code restriction against such early reconsideration did not preclude the city from taking the matter up at the March 23 meeting because the application had not been legally or effectively denied when it came on for second reading at the February 9 meeting, raises two questions bearing on the validity and effectiveness of the rejection of the ordinance at the February meeting. The first is whether the minutes of that meeting showed regularity of the proceedings, or revealed a fatal irregularity therein, with regard to the charter requirement for a reading in full of the ordinance at that meeting. The second question is whether, if a reading of the ordinance was not shown by the minutes due to their silence on that matter, or if the minutes revealed or indicated that requirement was not performed, then whether a failure to comply with the requirement of the charter for the reading of the ordinance in full operated to render ineffective and void the (rejection) action taken by the commission with respect to the rezoning application at the February 9 meeting.
The minutes of the February 9, 1971 meeting, after naming the officials present and reporting that the minutes of a prior meeting were read and approved, stated: "The meeting opened with consideration of adoption on second reading of an ordinance, passed and adopted on first reading on December 15, 1970, dealing with an amendment to ordinance No. 1525, as amended, known as the `Zone Code' by changing the zoning and granting special and qualified uses on various portions of that certain property described as `Cocoplum Beach Property'" [giving the location thereof]. The minutes then noted the number of persons present, and made certain recitations as to arguments of proponents and opponents, following which the minutes stated: "A lengthy discussion followed after which a motion was made by Commissioner Phillips that the ordinance be placed on second reading, with the provision that the deed restrictions submitted by the owners be approved by the City Attorney to cover the intent of the purposes for which offered and subject to the Master Plan being submitted to the Zoning Board for final approval. The motion seconded by Mayor Dressel, who relinquished the Chair to Vice Mayor Kerdyk, failed by the following roll call: `Yeas'  Commissioner Phillips; Mayor Dressel. Abstention  Commissioner Murphy. `Nays'  Commissioner Philbrick; Vice Mayor Kerdyk." That was followed in the minutes by recitation of the making and rejection of several substitute or amendatory motions with reference to the ordinance under consideration, and a statement of the closure of the meeting.
In Ramsey v. City of Kissimmee, 111 Fla. 387, 149 So. 553, a firm of civil engineers, alleging they had been employed by the city, filed an action to recover compensation for their services for partial performance under their alleged contract. The charter required contracts for more than $300, such as the one declared upon, to be made by the city commission. Under another provision of the charter such action was required to be done through passage of an ordinance or written resolution by the commission. The minutes *894 of the meeting in question (in the language of the Court) "showed a resolve by the city commission to employ Ramsey and Herndon as city engineers, contract to be later executed by the proper parties." Although that disclosure in the minutes was recognized as not being inconsistent with a contract having been made with the engineers, the minutes were regarded by the Court as having failed to show whether or not the commission had taken the action necessary to effectuate a valid contract, and the Court there stated that the duty to make a record of what the commissioners did at the meeting required that the minutes show the action of the commission with respect to such matter. In that case it was necessary, in order for the plaintiffs to recover, for them to show that a contract had been made with them by the commission in accordance with the charter requirements. Because the minutes were silent on the point, and were so imperfectly drawn that they did not show whether the required action was or was not performed, it was held that the fact of whether the required action was taken by the commission at the meeting in question could be established by evidence aliunde the minutes. In that case the Supreme Court, speaking through Chief Justice Davis, said (149 So. at 555):
"* * * A distinction is drawn between the right to offer evidence to contradict facts stated on the record, as distinguished from the showing of action taken which was never properly recorded on the record.
"The rights of creditors or of third persons, dealing with a municipal corporation, cannot be prejudiced by the neglect of the city council or of the city commission to keep proper minutes to show its own proceedings. What the city council, or what the city commission, in fact did, may be shown by evidence aliunde the record kept by them, when the record is completely silent or imperfectly kept. * * *"
That holding in the Ramsey case is applicable in this case, where the minutes of the February 9 meeting, at which the appellee claims the applied for amendment to the zoning ordinance was effectively rejected on "second reading," were silent as to whether the charter requirement for the ordinance to be read in full was or was not complied with, and where the minutes otherwise were so imperfectly drawn as to fail to show whether or not there was compliance with that charter requirement.
In the instant case, in order for the plaintiff to prevail and have the subsequent action of the commission on March 23, 1971, set aside on the ground that the application had been rejected at the earlier meeting, it was necessary for plaintiff to show that the earlier denial thereof was effectively accomplished upon a second reading at the meeting of February 9, 1971. To accomplish that the plaintiff introduced and relied on the minutes of that meeting. Those minutes sufficiently disclosed a voted rejection of the rezoning application, by a tie vote of four commissioners with one abstaining. However, on final hearing the defendants challenged the sufficiency of the plaintiff's evidence of prior rejection of the application, on the ground that the minutes did not show a valid rejection thereof at the February 9 meeting because of their failure to show the charter requirement for reading of the ordinance in full had been complied with, and because on the contrary the minutes as drawn appeared to disclose that the matter was taken up and voted upon without the ordinance having been read.
As noted earlier, § 14 of the charter required that such an ordinance be read on two separate days (unless that requirement should be dispensed with by four-fifths vote), and in addition, a separate provision in that section required: "The final reading shall be in full." Observance of that charter requirement at the February 9 meeting was essential to validity of action on the ordinance at that meeting.
*895 In Nelson v. State ex rel. Axman, Fla. 1955, 83 So.2d 696, the Supreme Court affirmed a judgment holding ineffective and invalid an ordinance where the minutes of the meeting involved did not reflect the vote thereon by reporting the Yeas and Nays as required by the city charter. In so holding the Court said:
"The Circuit Judge held the ordinance ineffective because of failure to comply with the requirements of the charter. We are compelled to agree with the trial Judge. The City has only such powers as are specifically granted to it or necessarily implied from the powers so granted. We have held that an ordinance of a municipal corporation is not enforceable until every provision of the city charter necessary to give it legal existence has been strictly complied with. See Adams v. Isler, 101 Fla. 457, 134 So. 535; State ex rel. Stephens v. City of Jacksonville, 103 Fla. 177, 137 So. 149." [Italics ours.]
The principle there announced is applicable to a charter requirement for the reading of an ordinance as being an act essential to the validity of the commission's action thereon, and as to the necessity for the minutes to show that the ordinance was read as required.
Thus in 62 C.J.S. Municipal Corporations § 416(b), it is said:
"* * * Although it has been held that the rules of procedure are merely directory and that they may be suspended by a municipal council acting as a legislative body, statutory or charter provisions prescribing the manner of enacting ordinances usually are considered mandatory. Thus, as a rule, the power of a municipal corporation to legislate must be exercised in the manner prescribed, or the enactment will be considered void and set aside."
Further therein, in § 418(a) it is said:
"A constitutional provision devoted to the legislative department and providing that all bills shall be read before enactment in each house on a specified number of days has no application to proceedings by municipal legislative bodies. However, where it is provided by charter or statute that ordinances or certain classes of ordinances shall be read on a designated number of days, or at more than one session or meeting, before passage thereof, these provisions according to the weight of authority are mandatory, and a noncompliance with them renders the ordinance void, unless, as discussed infra § 419, such readings have been formally dispensed with by vote of a designated number of the members of the council. * * *"
Similarly in 56 Am.Jur.2d, Municipal Corporations § 346, it is said:
"When a statute or charter provides a mode of procedure for municipal councils designed to protect the citizens and taxpayers from hasty and ill-considered legislation or to enforce publicity in the actions of the council, the mode of procedure thus prescribed must be strictly observed. Such statutory provisions constitute conditions precedent, and unless an ordinance or resolution is adopted in compliance with the conditions and directions thus prescribed it will have no force. Among the requirements which have been held to be mandatory is a provision that ordinances shall be read at distinct times or intervals."
See also, dealing with the requirement for a reading of an ordinance as being essential to valid action thereon, Van Der Veer v. State, 1929, 97 Ind. App. 1, 165 N.E. 265, 269; State v. Livermore, 192 Iowa 626, 185 N.W. 1; Village of Warrensville Hts. v. Cleveland Raceways, Ohio App. 1954, 116 N.E.2d 837.
The appellee cites Nash v. Vaughn, 133 Fla. 499, 182 So. 827, as being support for his contention that a failure of a city commission to comply with a charter requirement for the reading of an ordinance which comes on for final consideration should not operate to render the *896 action thereon ineffective or invalid. Upon examining the cited case we do not find therein any support for that proposition. There the Court was concerned with whether a charter requirement for a week to elapse between meetings on first and second reading had been met. The court concluded that the requisite period between the meetings had occurred. We observe no language in the opinion in that case to indicate the Court held a view that a charter requirement for reading of an ordinance, or one which required a certain interval between its consideration on first and on second reading, could be disregarded without affecting the validity of the commission's action. On the contrary, the Court dealt with the reading interval requirement as being an essential to validity of action on the matter involved, and by stating the purposes for which such reading requirements are inserted in charters ("The purpose of requiring the ordinance to be read at more than one session or meeting is to prevent undue haste and secure deliberation by the legislative body before its final passage"), it appears the Court regarded such requirements for readings, or the times therefor when specified by charter, to be essential to validity of a city commission's action on a matter with respect to which such a requirement was applicable.[6]
While contending the commission's nonobservance of the zoning code provision against reconsideration operated to invalidate the action on the ordinance at the March meeting, the plaintiff-appellee contends that failure to comply with the charter requirement to read the ordinance in full at the February meeting, if in fact it was not read, would not invalidate the action taken on the ordinance at that meeting. However, an invalidating irregularity may not be claimed and availed of in one instance and be overlooked or considered innocuous in another. The knife cuts both ways, or as said in the Bible (Matthew 26:52) "All they that take the sword shall perish by the sword."
The presumption that public officials properly perform their duties will not serve to establish that certain procedure for validity of action taken by the city commission, required by the charter, took place at a meeting, where there is a duty that the proceedings be recorded, if the minutes of the meeting show the required procedure was not taken, or fail to show that such required procedure was observed. Nor have we overlooked the established rules that the minutes of a meeting of such a city commission are the best evidence of the proceedings and actions taken at the meeting, and that statements thereof appearing in the minutes are not subject to collateral attack or to be contradicted by the officials. Those rules apply to statements which are made in the minutes that certain procedures, proceedings or actions were or were not taken or performed. But such rules do not have application to matters required to have been done to import validity to commission action where, notwithstanding the duty to report them, the minutes are silent thereon or so imperfectly drawn as not to reveal whether the required action was performed, or are so drawn as to leave the matter in doubt and in issue. Ramsey v. City of Kissimmee, supra.
It is our opinion from examination of the record in this case that the plaintiff did not sustain his burden to show that the application had been effectively rejected on second reading at the February 9 meeting. This is so because the minutes presented in *897 evidence did not show such valid action. They failed to disclose that there was a compliance with the requirement for reading of the ordinance in full on that occasion. On that feature the minutes were silent. As drawn they were such as to disclose, or from which it was strongly to be inferred, that the required reading of the ordinance was not done. With the minutes thus insufficient to show compliance with the reading requirement, it was not necessary for the defendant city at final hearing to offer evidence of noncompliance therewith. In the circumstances of the case, as shown by Ramsey v. City of Kissimmee, supra, in view of that deficiency in the minutes, the plaintiff, assuming ability to do so, could have shown by evidence aliunde the minutes that the charter requirement in question in fact had been complied with at the February 9 meeting. Such evidence was not produced. On the contrary, with their motion for rehearing the defendants presented affidavits of the city clerk and of three of the city commissioners that the ordinance was not read at the February 9, 1971, city commission meeting, and submitted a verbatim transcript of the meeting which nowhere showed that the ordinance was read.
For the reasons stated, we are impelled to conclude the trial court was in error in holding, as a necessary predicate to the judgment rendered, that the rezoning application ordinance was effectively and validly rejected by the city commission at its meeting of February 9, 1971, and therefore it is our opinion that the final judgment must be reversed.
It should be noted, however, that our reversal of the judgment is predicated upon the conclusion we reach that the commission's action on the ordinance at the February 9 meeting was not shown to be such as would invoke § 12.09 of the zoning code to preclude consideration of the ordinance on "second reading" at a meeting after the meeting of February 9, and that by holding the commission was not barred from considering the ordinance on "second reading" on March 23 our present decision does not purport to pass upon the effectiveness or validity, otherwise, of the action taken on the rezoning application by the commission on "second reading" at that subsequent meeting. As was the case at the February meeting, the validity of the action taken by the commission with respect to the rezoning application ordinance at the later March meeting must depend upon whether the requirements of the charter incident to consideration of such ordinance on "second reading" were complied with, including the requirement for the reading of the ordinance in full, and upon the need for the minutes to show that the latter and other charter requirements essential to validity of the action on the ordinance at the later meeting were duly performed.
We have considered, and find to be without merit, the appellee's cross-assignments of error.
The judgment is reversed.
NOTES
[1] Under the city zoning code applications for change of zoning proceed first to the Planning and Zoning Board.
[2] Such amendments to the zoning ordinance, when made, are accomplished by the enactment of an ordinance by the city commission.
[3] The city charter, in § 14, provides that the commission shall act by ordinance or written resolution, and that no ordinance shall be passed until it has been read on two separate days, unless that requirement is dispensed with by a four-fifths vote of the commission. That section also provides: "The final reading shall be in full," and requires the Yeas and Nays to be recorded in the minutes, and that an affirmative vote of a majority of all the members of the commission is necessary for the passage of an ordinance or resolution.
[4] The city zoning code, by § 12.09, entitled: "Limitations of Subsequent Applications," provides as follows: "Whenever any application for a variance or change of zoning shall have been finally determined, no other or further application for a variance or change of zoning with reference to the particular property affected by said application, or with reference to other property similarly situated, will be considered for a period of one (1) year following the date of such action. Should conditions affecting such property materially change, in the opinion of the City Commission, or should a modified plan for a variance or rezoning be presented to the City Commission, either of which in the opinion of the Commission would justify action before the expiration of such one (1) year period, the Commission by four-fifths (4/5) majority may permit the filing of such application for a variance of zoning, notwithstanding the provisions of this section."
[5] Safer v. City of Jacksonville, Fla.App. 1968, 212 So.2d 785, 787; Rhodes v. City of Homestead, Fla.App. 1971, 248 So.2d 674; Renard v. Dade County, Fla. App. 1971, 249 So.2d 500, 502.
[6] The purposes to be served by a charter requirement for an ordinance to be read in full when it comes on for second reading are applicable whether the action taken thereon is its rejection or is its passage, since an unwarranted rejection of an ordinance through haste or for lack of a full awareness and consideration of its contents would be no less an ill than would be its passage under such conditions.